UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| CAUSE OF ACTION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-1225 (ABJ) |
| | ) | |
| TREASURY INSPECTOR GENERAL FOR TAX ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This case arises out of an October 9, 2012 Freedom of Information Act ("FOIA") request submitted by plaintiff Cause of Action, a non-profit organization, to the Internal Revenue Service ("IRS"). Compl. [Dkt. # 1] ¶ 7; Pl.'s Resp. to Def.'s Statement of Undisp. Material Facts [Dkt. # 28] ¶ 1 ("Pl.'s SOF Resp."). The IRS referred one portion of plaintiff's FOIA request to defendant, the Treasury Inspector General for Tax Administration ("TIGTA"), and that part of the request is at issue here.[1] Pl.'s SOF Resp. ¶ 2. TIGTA is a component of the U.S. Department of the Treasury ("Treasury"), and its activities include the investigation of wrongdoing by IRS employees. Answer [Dkt. # 12] ¶ 4; Pl.'s SOF Resp. ¶ 8. The FOIA request referred to TIGTA sought "[a]ll documents . . . pertaining to any investigation by [TIGTA] into

---

1     The remainder of plaintiff's request is the subject of a different case pending before this Court: *Cause of Action v. I.R.S.*, No. 13-cv-0920 (D.D.C. filed June 19, 2013).

the unauthorized disclosure of [26 U.S.C.] § 6103 'return information' to anyone in the Executive Office of the President."[2]  Ex. 1 to Compl. [Dkt. # 1-1] at 2.

On November 30, 2012, TIGTA issued what is commonly called a Glomar response and informed plaintiff that it could neither admit nor deny the existence of any responsive records. Pl.'s SOF Resp. ¶ 4; *see also Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).  After unsuccessfully appealing defendant's response at the administrative level, plaintiff filed a complaint in this Court on August 9, 2013.  Pl.'s SOF Resp. ¶¶ 5–8; Compl.  Defendant answered the complaint on September 18, 2013, and moved for summary judgment on November 18, 2013.  Answer; Def.'s Mot for Summ. J. [Dkt. # 17].  That same day, defendant also filed a motion for leave to file supplemental materials under seal, which plaintiff opposed on December 2, 2013.  Def.'s Mot. to File Documents Under Seal [Dkt. # 18]; Pl.'s Mem. of P. & A. in Opp. to Def.'s Sealed Mot. [Dkt. # 21].  The Court granted defendant's motion for leave to file sealed materials on February 3, 2014, and it has considered those materials in connection with this memorandum opinion.  *See* Feb. 3, 2014 Minute Order.  Plaintiff cross-moved for summary judgment on December 23, 2013, arguing that defendant's Glomar response was improper.  Pl.'s Cross-Mot. for Summ. J. [Dkt. # 27].  Since the Court concludes that the Glomar response was inappropriate in this case, the Court will deny defendant's motion, grant plaintiff's motion, and remand the matter to the agency for the processing of the FOIA request.

---

[2]  It is a criminal offense for "any officer or employee of the United States . . . willfully to disclose to any person . . . any return or return information (as defined by section 6103(b))." 26 U.S.C. § 7213(a)(1).  It is also a criminal offense for "any officer or employee of the United States . . . willfully to inspect . . . any return or return information acquired by such person or another person" under other provisions of the title.  26 U.S.C. § 7213A(a)(1)(A), (a)(2) (2012).

## STANDARD OF REVIEW

In a FOIA case, the district court reviews the agency's action *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *accord Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).

On a motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). But where a plaintiff has not provided evidence that an agency acted in bad faith, "a court may award summary judgment solely on the basis of information provided by the agency in declarations." *Moore*, 601 F. Supp. 2d at 12.

## ANALYSIS

FOIA requires government agencies to release records upon request in order to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). But because "legitimate governmental and private interests could be harmed by [the] release of certain types of information," Congress provided nine specific exemptions to the disclosure requirements. *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."). These nine FOIA exemptions are to be construed narrowly. *Abramson*, 456 U.S. at 630.

A Glomar response "is proper if the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *Wolf*, 473 F.3d at 374. To justify this response, an agency must explain why it can neither confirm nor deny the existence of responsive records. *See Phillippi v. CIA,* 546 F.2d 1009, 1013 (D.C. Cir. 1976) ("Adapting these procedures to the present case would require the Agency to provide a public affidavit explaining in as much detail as is possible the basis for its claim that it can be required neither to confirm nor to deny the existence of the requested records."). This inquiry is not based on the content of the documents, but on whether the potential harm caused by revealing the mere existence of the documents is protected by a FOIA exemption. *See Wolf*, 473 F.3d at 374 ("In determining whether the existence of agency records *vel non* fits a FOIA exemption, courts apply the general exemption review standards established in non-*Glomar* cases.").

In this case, defendant contends that it cannot confirm or deny the existence of any records responsive to the relevant portion of plaintiff's FOIA request because that bare acknowledgement would compromise interests protected by Exemptions 3, 6, and 7(C). Mem. in Supp. of Def.'s Mot. for Summ. J. [Dkt. 17-1] at 1 ("Def.'s Mem."). But the Court finds that defendant's Glomar response is not justified by Exemption 3, and that defendant has waived its reliance on Exemptions 6 and 7(C) by officially acknowledging that records exist. Therefore, the case will be remanded to defendant for further action.

I. **Exemption 3 does not justify defendant's Glomar response because the existence of an investigation is not "return information."**

FOIA Exemption 3 authorizes agencies to withhold information that is "specifically exempted from disclosure by statute." 5 U.S.C. §§ 552(b)(3)(A)(i), (b)(3)(B). Defendant invokes Exemption 3 by pointing to section 6103 of the Internal Revenue Code, which requires that tax "[r]eturns and return information" be kept confidential subject to certain exceptions. *See*

26 U.S.C. § 6103(a). "That [section] 6103 is the sort of nondisclosure statute contemplated by FOIA exemption 3 is beyond dispute." *Tax Analysts v. I.R.S.*, 117 F.3d 607, 611 (D.C. Cir. 1997).

The "core purpose" of section 6103 is to "protect[ ] taxpayer privacy." *Id.* at 615. Congress provided a "deliberately sweeping" definition of "return information" in section 6103, *Landmark Legal Found. v. I.R.S.*, 267 F.3d 1132, 1135–36 (D.C. Cir. 2001), that includes:

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense . . . .

26 U.S.C. § 6103(b)(2)(A).

Defendant contends that it cannot confirm or deny the existence of any records relating to investigations of unlawful disclosures of return information to anyone in the Executive Office of the President because whether an investigation exists is, itself, return information. Def.'s Mem. at 10. Defendant acknowledges that the FOIA request at issue here does not call for the disclosure of any taxpayer's income, payment history, deductions, net worth, or liability. And the request does not call for information about whether a particular taxpayer's return has been or will be examined or subject to investigation. So the question presented is whether this request calls for information that falls within the third clause of the definition that begins "or any other data . . . ." Defendant claims that the existence of the sort of investigation described in the request constitutes "data . . . with respect to the determination of the existence, or possible existence of liability . . . of any person under [Title 26] for any . . . offense," *id.* at 10–11, even

5

though the request does not seek information about the liability of any taxpayer for an offense related to his own taxes. Therefore, defendant argues that its Glomar response is justified under Exemption 3. *Id*.

There is no question that the definition of "return information" in section 6103 "reaches far beyond what the phrase 'return information' would normally conjure up." *Landmark*, 267 F.3d at 1138; *see also Life Extension Found., Inc. v. I.R.S.*, 915 F. Supp. 2d 174, 181 (D.D.C. 2013) ("'Return information' is defined broadly by [section 6103] to include almost any information compiled by the IRS in connection with its determination of a taxpayer's liability for tax, interest, penalties, or civil or criminal offenses."), *aff'd* 559 F. App'x 3 (D.C. Cir. 2014). But the definition has limits. *See Church of Scientology of Cal. v. I.R.S.*, 792 F.2d 146, 151 (D.C. Cir. 1986) ("Congress would not have adopted such a detailed definition of return information in Section 6103 if it had simply intended the term to cover all information in IRS files . . . ."), *aff'd* 484 U.S. 9 (1987). The Court finds that, in this case, defendant has pushed those limits too far: the mere existence of records of investigations into unlawful disclosures of return information is not, itself, return information compiled by the IRS "in connection with its determination of a taxpayer's liability" for a violation of Title 26. *See Life Extension Found.*, 915 F. Supp. 2d at 181.

   A. *The Court does not owe "*Chevron*" deference to defendant's interpretation.*

As an initial matter, the Court notes that it does not owe *Chevron* deference to TIGTA's interpretation of the term "return information" because TIGTA did not "reach[ ] the interpretation asserted here in a notice-and-comment rulemaking, a formal agency adjudication, or in some other procedure meeting the prerequisites for *Chevron* deference." *Landmark*, 267 F.3d at 1135–36, citing *United States v. Mead Corp.*, 533 U.S. 218 (2001); *see also Chevron*,

*U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984). TIGTA does not contend otherwise. Therefore, the Court will accord defendant's interpretation only "the weight derived from [its] 'power to persuade.'" *Landmark*, 267 F.3d at 1136, quoting *Mead*, 533 U.S. at 228; *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). *But see Tax Analysts*, 117 F.3d at 613 (applying *Chevron* deference to the IRS's interpretation of the term "data" within the section 6103 definition of "return information" without further explanation).

> B. *The mere existence of an investigation into unnamed parties does not constitute "return information" under section 6103.*

The question presented in this case appears to be one of first impression: the parties have not cited, and the Court has not found, any binding authority that addresses the use of a Glomar response based on the claim that confirming the mere existence of records of an investigation into unnamed individuals for something other than an offense related to their liability as a

taxpayer would reveal confidential "return information."[3] Defendant contends that the existence of investigations of violations of section 6103 constitutes "return information" because it is "data . . . with respect to the determination of the existence, or possible existence, of liability . . . of any person under this title for any . . . offense." Pl.'s Mem. at 9–10, quoting 26 U.S.C. § 6103(b)(2)(A). The Court is concerned that defendant stripped the provision of its meaning and not simply surplussage when it took its scissor to the statute. But at this juncture, the Court need only find that under D.C. Circuit precedent, the term "data" in section 6013 does not stretch so far as to cover an acknowledgement of the mere existence of the records sought here. *See Tax Analysts*, 117 F.3d at 614–15.

---

3  The parties have directed the Court to two out-of-circuit cases. *See Hull v. I.R.S.*, 656 F.3d 1174 (10th Cir. 2011); *Leonard v. U.S. Dep't of Treasury*, No. 10-6625 (RBK/JS), 2012 WL 813837 (D. N.J. Mar. 9, 2012). In *Hull*, the plaintiff FOIA requesters sought information relating to two named third parties. *Hull*, 656 F.3d at 1176. The defendant, the IRS, did not assert a Glomar response, but it did refuse to search for responsive records, citing Exemption 3 and section 6103. *Id.* at 1192. The Tenth Circuit held that the IRS's response was appropriate because "a search for responsive documents and resulting confirmation that they exist would disclose the fact that a certain corporation and its pension plan had been in communication with the IRS" about matters that could subject both entities to tax liability. *Hull*, 656 F.3d at 1195. *Hull* is easily distinguished from this case, however, because the FOIA request at issue there related to the potential tax liability of two specific, named taxpayers. *See id.* Here, the request does not implicate any taxpayer's tax liability.

In *Leonard*, the court held that the IRS's Glomar response was inappropriate where a FOIA requester sought "whistleblower" forms bearing his own name that had been filed with the IRS. *Leonard*, 2012 WL 813837, at *3. The IRS contended that it could not even confirm the existence of the records because that would inform the plaintiff that he was under investigation, which would constitute "return information" under section 6103. *Id.* at *4. The court held that the IRS's Glomar response was not justified in part because the agency had not established that confirming "the mere existence of whistleblower forms filed about Plaintiff" would reveal return information since it would not "lead to the necessary conclusion that an IRS investigation ha[d] been undertaken against him." *Id.* at *5. The *Leonard* case is of little utility here since it turned upon the agency's failure to comply with procedural requirements that attach under Third Circuit precedent when Glomar is invoked, *id.* at *4, and the court found that the situation did not present the "exceptional circumstances" needed to support a Glomar response in that circuit. *Id.* at *5. But to the extent it is instructive at all, it tends to support the Court's ruling here.

In *Tax Analysts*, the Court of Appeals considered whether the legal analyses and conclusions contained within certain IRS field memoranda constituted "return information" under section 6103. *Id.* at 612. The IRS claimed that these legal conclusions fell "within the catchall 'other data'" provision of the statute at issue here. *Id.* The court found that it owed heightened deference to the IRS's position under *Chevron*,[4] but concluded that, "while the IRS's interpretation of 'data' in [section 6103] [might] be linguistically possible," it was not "a permissible construction of the statute in light of its structures and purposes." *Id.* at 616. Noting that "data" is not limited to information that directly identifies a taxpayer, the court held that "data" within the context of 26 U.S.C. § 6103(b)(2)(A) is still information that is "unique to a particular taxpayer." *Id.* at 614; *see also Church of Scientology of Cal. v. IRS*, 484 U.S. 9, 15 (1987) ("'[R]eturn information' remains such even when it does not identify a particular taxpayer."). The court also stated that the IRS had failed to justify the argument that "non-taxpayer-specific" information constituted "return information," since withholding it "ha[d] nothing to do with § 6103's core purpose of protecting taxpayer privacy." *Id.* at 615, citing *Church of Scientology*, 484 U.S. at 16.[5]

---

4 The court did not explain why it applied *Chevron* deference in that case, and based upon more recent binding authority, the Court concludes that it does not apply here. *See Landmark*, 267 F.3d at 1135–36, citing *Mead*, 533 U.S. 218. Moreover, TIGTA does not raise the issue of deference in its pleadings.

5 The Court further notes that that "data" in section 6103 can encompass information that is specific to an individual taxpayer, even when that person is a third party. *See, e.g.*, *Landmark*, 267 F.3d at 1137 ("[T]he term 'data' is correctly understood to cover the identity of third parties who urge the IRS to withdraw or reexamine an entity's tax-exempt status."); *Tax Analysts v. I.R.S.*, 391 F. Supp. 2d 122, 130–31 (D.D.C. 2005) (personal information of taxpayers redacted from IRS "Check Sheets" and "Harm Memos" was "data" exempt from disclosure under section 6103); *Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 29 (D.D.C. 2003) (names and addresses of individuals who complained to the IRS about the plaintiff constituted "data").

The *Tax Analysts* opinion is instructive here.[6] At this stage of the case, the only question is whether defendant must acknowledge if some records exist related to an unknown number of investigations into a particular set of unauthorized disclosures of tax return information: those made to unnamed individuals in the Executive Office of the President. This information is not "unique to a particular taxpayer" and it is not "return information," as broadly defined as that term may be.[7] Defendant has therefore not carried its burden to "explain[] in as much detail as is possible the basis for its claim that it can be required neither to confirm nor to deny the existence of the requested records." *See Phillippi*, 546 F.2d at 1013.

The Court further notes that defendant's sealed pleading "only" relates to Exemptions 6 and 7(C), and that defendant states in the sealed pleading that it has "fully addressed" the Exemption 3 issues in its public filings. Since defendant's arguments in its public materials are insufficient, the Court concludes that the information protected by defendant's Glomar response is not "return information" under section 6103, and that defendant's reliance on Exemption 3 is not justified.

---

6  In *Landmark*, the D.C. Circuit characterized the holding of *Tax Analysts* as limited to the narrow proposition that section 6103 did not cover the particular field memoranda at issue in that case. 267 F.3d at 1137–38. The court further noted that *Tax Analysts* did not "consider whether propositions that were neither factual nor legal qualified as 'data.'" *Id.* at 1138. But *Tax Analysts* is still relevant to this case because, here, the question is not whether the information defendant seeks to conceal is "factual" – which it plainly is – but rather whether this factual information is "*unique to a particular taxpayer*" – which it is not. *See Tax Analysts*, 117 F.3d at 614 (emphasis added).

7  Defendant posits that there is a vague "risk" that revealing the existence of the records plaintiff seeks would confirm that those records are "unique to a particular taxpayer." Def.'s Mem. at 13. But any risk of that happening is minimal, since the Executive Office of the President has nearly 2,000 employees, and the mere revelation that an undisclosed number of records exists would not link those records to any specific person or people. *See* Ex. 8 to Pl.'s Mot. at 27 (table indicating that, in 2010, the Executive Office of the President employed 1,965 people).

### C. TIGTA's own actions undermine its broad claims.

The Court also observes that TIGTA's claim that the existence of an investigation constitutes "return information" is undermined by its own actions. TIGTA has repeatedly acknowledged that investigations into the unlawful disclosure of return information exist, both in public reports to Congress and in response to other FOIA requests by plaintiff. *See* Ex. 5 to Pl.'s Mem. [Dkt. # 27-1] (two letters to U.S. Senators stating the number of investigations "involving potential violations of Title 26" that TIGTA had conducted in the past six months); Ex. 4 to Pl.'s Mem. [Dkt. # 27-1] at 13 (chart released by TIGTA to plaintiff in response to a FOIA request stating that TIGTA had closed 290 investigations into "unauthorized access to tax return information" in 2012). The fact that TIGTA has publicly announced that it has investigated unlawful disclosures of, or access to, that body of information protected by statute as "return information" strongly suggests that the fact of an investigation is not, itself, "return information."

"As *Skidmore* deference looks in part to an agency's consistency, this must count against" TIGTA's claims about the definition of "return information." *Landmark*, 267 F.3d at 1137 (internal citations omitted). These acknowledgements by TIGTA further support the Court's conclusion that the "core purpose" of section 6103 – to "protect[ ] taxpayer privacy" – would not be undermined if TIGTA revealed the existence of the records at issue in this case. *See Tax Analysts*, 117 F.3d at 611, 615. For all of these reasons, the Court finds that defendant's Glomar response is not justified by Exemption 3.

### II. Although defendant properly invoked Exemption 7(C), it has waived reliance on Exemptions 7(C) and 6 by officially acknowledging the existence of an investigation.

Defendant also asserts that its Glomar response is justified by FOIA Exemptions 6 and 7(C). *See* Def.'s Mem. at 14. Exemption 6 shields from mandatory disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted

11

invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects information that was (1) compiled for law enforcement purposes if (2) the disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). Because Exemption 7(C) involves a lower threshold than the one set forth in Exemption 6, which requires a "*clearly* unwarranted invasion" of privacy, the Court will address Exemption 7 first. *See id.* § 552(b)(6) (emphasis added); *see also U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 756 (1989) (comparing Exemptions 7(C) and 6). To determine whether either Exemption 7(C) or 6 applies in this case, the Court balances defendant's asserted privacy interest against the public interest in disclosure of information. *See id.* at 758–59.

> A. *The asserted privacy interest outweighs the public interest in disclosure and so Exemption 7(C) applies.*

Plaintiff does not dispute that the records it seeks relate to defendant's law enforcement functions. Pl.'s Mem. of P. & A. in Supp. of its Opp. to Def.'s Mot. for Summ. J. & in Supp. of its Cross-Mot. for Summ. J. [Dkt. # 23] at 17 ("Pl.'s Mem."). Rather, plaintiff contends that defendant has not established a privacy interest sufficient to outweigh "the only public interest relevant for purposes of Exemption 7(C)," which is "'the citizens' right to be informed about what their government is up to.'" *See Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992), quoting *Reporters Comm.*, 489 U.S. at 773; *see also* Pl.'s Mem. at 18. Specifically, plaintiff states that "there is a significant public interest in learning whether TIGTA has conducted any investigations of unauthorized disclosures to [the Executive Office of the President] because it would reveal how TIGTA responds to allegations of Section 6103 violations by officials at the highest level of the Executive Branch." Pl.'s Reply in Supp. of Pl.'s Cross-Mot. for Summ. J. & Opp. to Def.'s Mot. for Summ. J. [Dkt. # 34] at 13 ("Pl.'s Reply").

But Exemption 7(C) also "takes particular note of the 'strong interest' of individuals, whether they be suspects, witnesses, or investigators, 'in not being associated unwarrantedly'" with law enforcement activity. *Dunkelberger v. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990), quoting *Stern v. FBI*, 737 F.2d 84, 91–92 (D.C. Cir. 1984). Therefore, as a general matter, a Glomar response supported by Exemption 7(C) is justified when "confirming or denying the existence of the records would associate the individual named in the request with criminal activity." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995). And in the Glomar context, the protections of Exemption 7(C) can apply even if admitting the existence of records would not definitively link an individual to a criminal inquiry; if an "[o]fficial acknowledgement" would "'engender comment and speculation and carr[y] a stigmatizing connotation,'" the exemption is triggered. *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health* ("*PETA*"), 745 F.3d 535, 542–43 (D.C. Cir. 2014) (finding Glomar response appropriate where an acknowledgement of the existence of records would have implicated at least one of three individuals named in a FOIA request in a law enforcement investigation), quoting *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 767 (D.C. Cir. 1990).

In this case, plaintiff's FOIA request does not name any individuals; rather, plaintiff seeks records relating to any investigations of unauthorized disclosures of section 6103 "return information" to "anyone in the Executive Office of the President." Ex. 1 to Compl. at 2. But plaintiff's pleadings in this case, which are available on the public docket, *do* name an individual plaintiff believes to have been investigated by defendant: the former Chairman of the Council of Economic Advisors, Austan Goolsbee. *See* Pl.'s Mem. at 5–9; Pl.'s Reply at 8–12. The Court must therefore consider the privacy interests of Mr. Goolsbee in the balance.

Plaintiff contends that "there is a significant public interest" in knowing "how TIGTA responds to allegations of Section 6103 violations by officials at the highest level of the Executive Branch." Pl.'s Reply at 13. But allegations of government misconduct "'are easy to allege and hard to disprove,' [so] a requester 'must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.'" *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 898 F. Supp. 2d 93, 105 (D.D.C. 2012), quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174–75 (2004). Plaintiff has not produced any evidence that would reasonably suggest that TIGTA has not properly handled the type of investigation addressed in its FOIA request.

At the same time, any unnamed individuals who may have been investigated lack a privacy interest in the disclosure of the mere fact of the existence of records of investigations in general. But Mr. Goolsbee's significant privacy interest outweighs the public interest asserted by plaintiff. Any confirmation of the existence of the investigatory records that plaintiff seeks would certainly "'engender comment and speculation and carr[y] a stigmatizing connotation'" as to Mr. Goolsbee. *See PETA*, 745 F.3d at 542, quoting *Fitzgibbon*, 911 F.2d at 767. Therefore, a Glomar response would be justified by Exemption 7(C) in the face of plaintiff's request for records revealing the existence of an investigation of him. The Court notes that it has not relied on defendant's sealed pleading to reach this conclusion, and that it finds that a privacy interest cognizable under Exemption 7(C) is implicated here only to the extent that plaintiff's publicly-filed pleadings identify Mr. Goolsbee by name.

> B. *Defendant has waived its Glomar response by officially acknowledging the existence of an investigation.*

But the Court cannot sustain defendant's Glomar response because defendant has waived the protections of Exemption 7(C) by officially acknowledging the existence of an investigation

into Mr. Goolsbee on the public record.[8] *See Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 620 (D.C. Cir. 2011) ("If the government has officially acknowledged information, a FOIA plaintiff may compel disclosure of that information even over an agency's otherwise valid exemption claim."). Information is "officially acknowledged" if: "(1) the information requested [is] as specific as the information previously released; (2) the information requested . . . match[es] the information previously disclosed; and (3) the information requested . . . already [has] been made public through an official and documented disclosure." *Id.* at 620–21, citing *Wolf*, 473 F.3d at 378; *Fitzgibbon*, 911 F.2d at 765. When faced with a Glomar response, all a plaintiff must show is that "the agency has already disclosed the fact of the existence (or nonexistence) of responsive records, since that is the purportedly exempt information that a Glomar response is designed to protect." *Am. Civil Liberties Union v. C.I.A.*, 710 F.3d 422, 427 (D.C. Cir. 2013). An agency's "official acknowledgement waiver" extends only to the particular records it has acknowledged, not the entire class of records a FOIA requester seeks. *Wolf*, 473 F.3d at 379.

In 2010, Mr. Goolsbee made a statement during a press conference that led some to be concerned that he had "improperly accessed and disclosed" the confidential return information of a taxpayer, Koch Industries, Inc. Ex. 1 to Pl.'s Mem. [Dkt. # 27-1] at 1–2 (letter from U.S. Senators to the Treasury Inspector General for Tax Administration expressing concern and requesting a review). On September 28, 2010, the Inspector General for Tax Administration sent a letter to several U.S. Senators stating that he would commence a "review" into Mr. Goolsbee's

---

8     This waiver applies equally to defendant's claims under Exemption 6, and so the Court will not address those arguments here. The parties dispute whether section 6103 is subject to waiver, but the Court need not reach that issue because it has already determined that the information defendant seeks to protect through its Glomar response does not constitute "return information."

comment. Ex. 2 to Pl.'s Mem. [Dkt. # 27-1] at 1.  And on August 10, 2011, a TIGTA Special Agent sent an email to the Chief Legal Counsel of Koch Industries, stating that "the final report relative to the investigation of Austan Goolsbee's press conference remark is completed, has gone through all the approval processes, and would now be available through a [FOIA] request." Ex. 3 to Pl.'s Mem. [Dkt. 27-1].

The Court finds that even if the Inspector General's letter to the Senators was not alone sufficient to constitute a waiver, the letter combined with the email supplies official confirmation of the existence of responsive records – the one fact that the Glomar response was intended to withhold.  In the letter, the Inspector General confirmed publicly that the agency was looking into the matters raised by the Senators, but he said that he would "review" the allegations, and did not use the word "investigate."  *See* Ex. 2 to Pl.'s Mem. at 1.  Given the difference between the words "review" and "investigate" when the conduct at issue is potentially criminal, one could conclude that the information in the letter does not precisely "match the information" sought in the FOIA request.  *See Am. Civil Liberties Union*, 628 F.3d at 620.

But the email from the TIGTA Special Agent fills in the gap.  It expressly confirms the existence of records about an investigation that meets all of the parameters of plaintiff's FOIA request.  Defendant does not dispute the authenticity of the email, nor does it claim that the email was unauthorized or unofficial.  Rather, it contends that the Court should disregard the email because "disclosures in the course of investigations and criminal cases do not waive an agency's FOIA Exemptions." Def.'s Reply at 12.  But defendant does not claim that the Special Agent's email was actually sent "in the course of" an investigation or a criminal case, nor could it; indeed, on its face, the email confirms that an investigation has *concluded*.

16

Defendant offers no other argument as to why this email is not an official acknowledgement of the existence of an investigation into Mr. Goolsbee's comment, and so the Court finds that defendant has waived its ability to assert a Glomar response to protect the privacy of Mr. Goolsbee. *See Wolf*, 473 F.3d at 379. Moreover, upon review of the full record, the Court finds that defendant has failed to establish any other basis that would justify a Glomar response based on Exemptions 6 or 7(C). So, defendant has waived its Glomar response on those grounds in its entirety. Thus, the Court will remand this case to TIGTA so that it may "determine whether the *contents* -- as distinguished from the *existence* – of the officially acknowledged records may be protected from disclosure" by a FOIA exemption. *Wolf*, 473 F.3d at 379.

## CONCLUSION

The Court finds that the fact of the existence of any records within the category of records that plaintiff seeks is not confidential "return information" under section 6103 of the Internal Revenue Code, and so defendant's Glomar response is not supported by FOIA Exemption 3. Furthermore, although the existence of some records might be a fact protected by FOIA Exemption 7(C), the Court finds that defendant has waived reliance on both Exemption 7(C) and Exemption 6 by officially acknowledging its investigation into questions raised by the public statements of a particular administration official, and by failing to offer any other basis that would support a Glomar response on those grounds. Therefore, defendant's motion for summary judgment will be denied, and plaintiff's cross-motion for summary judgment will be granted. The Court will remand the case to the agency for further action consistent with this opinion. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: September 29, 2014