# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CAUSE OF ACTION, | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | Civil Action No. 13-1225 (ABJ) |
|  | ) | |
| TREASURY INSPECTOR GENERAL FOR TAX ADMINISTRATION, | ) ) ) | |
|  | ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

This case arises out of a Freedom of Information Act ("FOIA") request submitted by plaintiff Cause of Action, a non-profit organization, to the Internal Revenue Service ("IRS") on October 9, 2012. The IRS referred one portion of the request to defendant, the Treasury Inspector General for Tax Administration ("TIGTA"). On November 30, 2012, TIGTA informed plaintiff that it could neither admit nor deny the existence of any responsive records, asserting what is commonly known as a "Glomar" response. Plaintiff filed a complaint challenging defendant's Glomar response, and the Court found that the response was not justified. Therefore, the Court remanded the matter to TIGTA with instructions to process plaintiff's request.

TIGTA then conducted a search for records responsive to plaintiff's FOIA request, and it identified over 2,500 pages of records, the vast majority of which were withheld in full. But in the course of this litigation, it became clear that none of the records that defendant identified as responsive to plaintiff's request were, in fact, responsive. For that reason, and because the Court finds that defendant's search for responsive records was adequate, the Court will grant defendant's motion for summary judgment and deny plaintiff's cross-motion for summary judgment.

**BACKGROUND**

On October 9, 2012, plaintiff submitted a FOIA request to the Internal Revenue Service seeking eight categories of records. Ex. 1 to Compl. [Dkt. # 1-1] ("FOIA Req."). The seventh item of the request sought: "All documents, including but not limited to emails, letters, telephone logs, and reports pertaining to any investigation by the Treasury Inspector General for Tax Administration into the unauthorized disclosure of § 6103 'return information' to anyone in the Executive Office of the President." *Id*. at 2. The IRS referred this portion of plaintiff's request to defendant.[1] Def.'s Statement of Undisp. Material Facts [Dkt. # 46-2] ("Def.'s SOF") ¶ 1; Pl.'s Statement of Undisp. Material Facts in Supp. of Cross-Mot. for Summ. J. [Dkt. # 48-2] ("Pl.'s SOF") ¶ 3.

TIGTA is a component of the U.S. Department of the Treasury, and its activities include the investigation of wrongdoing by IRS employees. On November 30, 2012, TIGTA issued a response neither confirming nor denying the existence of responsive documents, commonly known as a "Glomar" response. Def.'s SOF ¶¶ 8, 10; Pl.'s SOF ¶¶ 4, 6; *see also Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). After exhausting the administrative process, plaintiff filed suit in this Court. Compl. Both parties moved for summary judgment, Def.'s SOF ¶ 11; Pl.'s SOF ¶ 15, and on September 29, 2014, the Court denied defendant's motion and granted plaintiff's cross-motion, finding that the Glomar response was not justified. Order (Sept. 29, 2014) [Dkt. # 37]; Mem. Op. (Sept. 29, 2014) [Dkt. # 38]. The Court remanded the matter to TIGTA with instructions to process plaintiff's request.

On remand, TIGTA conducted a search that yielded 2,509 pages of records it deemed responsive to plaintiff's FOIA request. Def.'s SOF ¶ 14; Pl.'s SOF ¶ 16. TIGTA withheld all but

---

1   The remainder of plaintiff's request is the subject of a different case before the Court. *See Cause of Action v. IRS*, No. 13-0920 (ABJ), 2015 WL 5120863, at *1 (D.D.C. Aug. 28, 2015).

27 pages in full and 4 pages in part, citing FOIA Exemptions 3,[2] 5, 6, and 7(c). Def.'s SOF ¶¶ 16, 19–26; *see also* Pl.'s SOF ¶ 18.

Defendant moved for summary judgment on January 30, 2015. Def.'s Mot. for Summ. J. [Dkt. # 46] ("Def.'s Mot."). On February 24, 2015, plaintiff filed an opposition to defendant's motion combined with a cross-motion for summary judgment. Pl.'s Mot for Summ. J. [Dkt. # 48] ("Pl.'s Mot."); Mem. of P. & A. in Opp. to Def.'s Mot. & in Supp. of Pl.'s Mot. [Dkt. # 48-1] ("Pl.'s Mem."). On March 13, 2015, defendant moved for leave to supplement its motion for summary judgment with documents filed for the Court's *in camera* review. Def.'s Mot. for Leave to Submit Docs. for Court's *in Camera* Review [Dkt. # 52] ("Def.'s *in Camera* Mot."), which plaintiff opposed. Pl.'s Opp. & Objection to Def.'s *in Camera* Mot. [Dkt. # 54]. On March 23, 2015, the Court granted defendant's motion, *see* Minute Order (Mar. 23, 2015), and it has considered the materials filed *in camera* in connection with this Memorandum Opinion. *See Arieff v. U.S. Dep't of Navy*, 712 F.2d 1462, 1469 (D.C. Cir. 1983) ("[T]he receipt of *in camera* affidavits . . . when necessary, [is] 'part of a trial judge's procedural arsenal.'"), quoting *United States v. Southard*, 700 F.2d 1, 11 (1st Cir. 1983).

On April 1, 2015, plaintiff filed a reply in support of its cross-motion in which it clarified that its request only sought records related to "investigations into unauthorized disclosures" of return information, and not records related to "investigations into *alleged* unauthorized disclosures." Pl.'s Reply in Supp. of Pl.'s Mot. [Dkt. # 55] ("Pl.'s Reply") at 5 (emphasis in original). Plaintiff further stated that if TIGTA "conducted an investigation into *allegations* of unauthorized disclosure, such records are not responsive." *Id.* (emphasis in original). Finally,

---

2   FOIA Exemption 3 authorizes agencies to withhold information that is "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3)(A)(i), (b)(3)(B). In this case, defendant invoked Exemption 3 in conjunction with 26 U.S.C. § 6103. Def.'s SOF ¶¶ 15–16.

3

plaintiff asserted that TIGTA had "misconstrued" its request "as seeking records pertaining to any investigation by TIGTA into 'alleged unauthorized disclosure.'" *Id.*

In light of plaintiff's clarification of the scope of its request, the Court ordered TIGTA "to publicly file a notice, with a declaration attached . . . stating whether any of the 2,509 pages of records . . . are responsive to the only request at issue in this case." Order (July 28, 2015) [Dkt. # 57]. On July 30, 2015, plaintiff informed the Court that "all of the 2,509 pages of records at issue in this case consist of records related to TIGTA's investigation into allegations of unauthorized disclosures. Thus, none of the 2,509 pages of records that TIGTA located in response to Cause of Action's FOIA request are responsive." 3d Decl. of Gregory M. Miller [Dkt. # 58-1] ("3d Miller Decl.") ¶ 5; *see also* Notice [Dkt. # 58] at 1.

On August 3, 2015, plaintiff responded to defendant's notice, emphasizing again that its request did not seek "records relating to allegations of unauthorized disclosures that did not lead to findings of actual unauthorized disclosures." Pl.'s Resp. to Def.'s Notice [Dkt. # 59] at 2.

## STANDARD OF REVIEW

In a FOIA case, the district court reviews the agency's action *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *accord Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).

On a motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But where a plaintiff has not provided evidence that an agency acted in bad faith, "a court may award

summary judgment solely on the basis of information provided by the agency in declarations." *Moore*, 601 F. Supp. 2d at 12.

## ANALYSIS

I. **Defendant's declarations describe an adequate search for responsive records.**

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999), quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). The Court finds that TIGTA has made that showing here.

To demonstrate that it has performed an adequate search for records responsive to a FOIA request, an agency must submit a reasonably detailed affidavit describing the search. *Oglesby*, 920 F.2d at 68 (finding summary judgment improper where agency's affidavit lacked sufficient detail); *see also Defenders of Wildlife v. U.S. Border Patrol (Defenders II)*, 623 F. Supp. 2d 83, 91–93 (D.D.C. 2009) (same). A declaration, therefore, must at least include the agency's "rationale for searching certain locations and not others." *Defenders II*, 623 F. Supp. 2d at 92; *see also Nat'l Sec. Counselors v. CIA*, 849 F. Supp. 2d 6, 11 (D.D.C. 2012) (finding affidavit sufficient where it "outline[d] with reasonable detail the CIA's decision to limit the search" to a particular area); *Hooker v. U.S. Dep't of Health & Human Servs.*, 887 F. Supp. 2d 40, 51 (D.D.C. 2012) (finding that the agency's declaration "fail[ed] to explain . . . why those offices were the reasonably likely locations of the records sought"). Agency affidavits attesting to a reasonable search "are afforded a presumption of good faith" that "can be rebutted only 'with evidence that the agency's search was not made in good faith.'" *Defenders of Wildlife v. U.S. Dep't of Interior (Defenders I)*,

314 F. Supp. 2d 1, 8 (D.D.C. 2004), quoting *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001).

An agency's declarations "need not 'set forth with meticulous documentation the details of an epic search for requested records,'" *Defenders II*, 623 F. Supp. 2d at 91, quoting *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982), but they should "describe what records were searched, by whom, and through what processes." *Id.*, quoting *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994). Conclusory assertions about the agency's thoroughness are not sufficient. *See Morley v. CIA*, 508 F.3d 1108, 1121–22 (D.C. Cir. 2007) (finding agency's "single, conclusory affidavit" to be inadequate). At the same time, however, where an "affidavit could in theory be more detailed, that fact alone does not warrant denying summary judgment in favor of" a defendant. *White v. DOJ*, 840 F. Supp. 2d 83, 89 (D.D.C. 2012).

  A. *Defendant's search was adequate.*

The FOIA request at issue in this case sought "all documents, including but not limited to emails, letters, telephone logs, and reports pertaining to any investigation by [TIGTA] into the unauthorized disclosure of § 6103 'return information' to anyone in the Executive Office of the President." *See* FOIA Req. at 2. Dianne Bowers, a Government Information Specialist in the Disclosure Branch of the Office of Chief Counsel at TIGTA, was assigned to coordinate the agency's search. Decl. of Diane K. Bowers [Dkt. # 46-4] ("Bowers Decl.") ¶¶ 1, 3. Bowers first determined that "any records relating to the investigation of potential unauthorized disclosures of return information" would be "maintained by the Office of Investigations, the Office of Chief Counsel, and the Front Office." *Id.* ¶ 5. She then sent search memoranda and a copy of plaintiff's FOIA request to those offices, asking each one to "conduct a manual and electronic search of its files to identify and locate any records that might be responsive." *Id.* The Front Office

subsequently referred the search request to the Office of Communications and the Office of Audit for further searches. *Id.*

Three individuals in the Office of Chief Counsel informed Bowers that they possessed potentially responsive records. Bowers Decl. ¶ 6. Based on those records, Bowers was able to identify additional potentially responsive records in the possession of the Office of Investigations. *Id.* ¶ 9. An individual in the Office of Investigations informed Bowers that those records were the only ones that office possessed that might be responsive, but Bowers directed her to conduct an additional search to ensure that nothing would be missed. *Id.* ¶ 10. The additional search of the Office of Investigations did not reveal any more records. *Id.* ¶ 11.

Two individuals in the Front Office informed Bowers that they might possess responsive records, but Bowers reviewed the records and determined that they were not responsive. Bowers Decl. ¶ 7. In addition, TIGTA's Communications Director and Assistant Inspector General for Audit informed Bowers that they did not possess any responsive records. *Id.* ¶ 8.

In total, Bowers collected 2,441 pages of records that she deemed responsive to plaintiff's FOIA request. *Id.* ¶ 12.

After the Court remanded this case to TIGTA in September 2014, Gregory Miller, an attorney in TIGTA's Office of Chief Counsel, reviewed the records that Bowers had collected. Decl. of Gregory M. Miller [Dkt. # 46-3] ("Miller Decl.") ¶¶ 1–2, 5. He realized that Bowers had not received any responsive records from the Front Office or Office of Communications, "even though records previously produced by other offices appeared to have been circulated to them." *Id*. ¶ 6. So, he re-sent the search request to the Director of Communications, the Media Liaison, the Counselor to the Inspector General, and the Executive Assistant to the Inspector General. *Id.* He states that he chose those individuals "because collectively, they would have knowledge of and

access to records of the Front Office and Office of Communications that would be responsive" to plaintiff's request. *Id.* These further searches resulted in an additional 68 pages of records, bringing the total to 2,509. *Id.* ¶ 10.

Plaintiff first argues that the Bowers and Miller declarations do not describe an adequate search for responsive records because they fail to identify any search terms or to describe the "specific files searched to locate responsive records." Pl.'s Mem. at 16. Plaintiff points out that the declarations merely indicate that the various TIGTA components were tasked with performing "manual and electronic search[es]" of their files, *id.* at 17; *see also* Bowers Decl. ¶ 5, and objects that "the declarations fail to explain how these other offices and individuals conducted their searches." Pl.'s Mem. at 18; *see also* Pl.'s Reply at 3 n.3. Plaintiff also argues that the declarations do not establish that the search was adequate because the declarants failed to state "whether TIGTA searched in all files likely to contain relevant documents." Pl.'s Mem. at 18.

Although defendant's affidavits could certainly be more detailed, the Court finds that, under the circumstances of this case, the search described was adequate. First, it is undisputed that, "[i]n cases where documents are collected from several different offices, unit-specific descriptions are not required, and the affidavit of the officer ultimately responsible for the supervision of the FOIA search is sufficient." *Trans Union*, 141 F. Supp. 2d at 68–69; *see also Judicial Watch, Inc. v. U.S. Dep't of Health & Human Servs.*, 27 F. Supp. 2d 240, 244 (D.D.C. 1998) ("Unit-specific descriptions are not required, at least where plaintiff has failed to raise some issue of fact necessitating rebuttal."). That is what happened here: Bowers and Miller coordinated a wide-ranging search for records in numerous components of TIGTA, instructing the searchers to look for records in both electronic and hard-copy file systems, and, in some cases, requiring searchers to double-check their work. *See, e.g.*, Bowers Decl. ¶ 10; Miller Decl. ¶¶ 6–9.

Moreover, the narrow specificity of plaintiff's request – even as construed more broadly by defendant – coupled with the averments made in defendant's *in camera* filings, make defendant's failure to identify specific keywords less troubling in this particular case. *See Friends of Blackwater v. U.S. Dep't of Interior*, 391 F. Supp. 2d 115, 120 (D.D.C. 2005) (stating that the "fail[ure] to enumerate any specific search terms used" in a FOIA search "might not be enough to invalidate an otherwise adequate affidavit"). And Bowers does aver that she tasked the offices that maintain "any records relating to the investigation of potential unauthorized disclosures of return information." Bowers Decl. ¶ 5. Thus, although the description of the search process "could in theory be more detailed," *see White*, 840 F. Supp. 2d at 89, there is just enough here to support judgment for the agency in this case.

Plaintiff also contends that defendant's "failure to identify known documents" – specifically, "follow-up communication" related to a letter TIGTA sent to certain U.S. Senators on September 28, 2010, and two unsigned copies of that letter – indicates that the search was not adequate. Pl.'s Mem. at 19–20; *see also* Pl.'s Reply at 4–5. But plaintiff has not demonstrated that any "follow-up communication" related to the September 28, 2010 letter actually occurred, *see* Pl.'s Mem. at 20 (acknowledging that "it is possible that TIGTA never sent a follow-up communication to its September 28, 2010 letter"), and "mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991), citing *Weisberg v. DOJ*, 745 F.2d 1476, 1486–87 (D.C. Cir. 1980). Moreover, with respect to all of the purportedly "known documents," "it is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *see also Judicial Watch*, 27 F. Supp. 2d at 244

(stating that the "plaintiff's speculation" as to documents that were not released "is insufficient as a matter of law to defeat [the] defendant's motion for summary judgment as to the adequacy of the FOIA search"). Therefore, the Court concludes that, under the particular circumstances of this case, defendant's search for responsive records was adequate.[3]

## II. The records uncovered by defendant are not responsive to plaintiff's FOIA request.

Item seven of plaintiff's FOIA request asked defendant to produce "[a]ll documents, including but not limited to emails, letters, telephone logs, and reports pertaining to any investigation . . . into the unauthorized disclosure of § 6103 'return information' to anyone in the Executive Office of the President." FOIA Req. at 2. An agency responding to a FOIA request is obligated "to construe a FOIA request liberally.'" *LaCedra v. Exec. Office for U.S. Att'ys*, 317 F.3d 345, 348 (D.C. Cir. 2003), quoting *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). TIGTA fulfilled that obligation by conducting a search for "any records relating to the investigation of *potential* unauthorized disclosures of return information." Bowers Decl. ¶ 5 (emphasis added).

In its reply brief, however, plaintiff clarified that the FOIA request sought records related only to investigations that resulted in a finding that an unauthorized disclosure actually occurred. Pl.'s Reply at 5 (stating that defendant "misconstrued" plaintiff's request "by searching for investigations into *alleged* unauthorized disclosures as opposed to investigations into unauthorized disclosures") (emphasis in original). Plaintiff stated that if TIGTA "conducted an investigation

---

3   Plaintiff also argues that the search was inadequate because defendant's declarations do not indicate that defendant specifically searched for records related to its investigation of a former Chairman of the Council of Economic Advisors, Austan Goolsbee. Pl.'s Mem. at 10, 19–20; Pl.'s Reply at 4. The Court previously found that TIGTA had publicly acknowledged the existence of its investigation of Mr. Goolsbee. Mem. Op. (Sept. 29, 2014) at 14–16. But for the reasons stated above, the Court finds that this fact does not compel the conclusion that the search was inadequate as a matter of law.

into *allegations* of unauthorized disclosure, such records are not responsive." *Id.* (emphasis in original).

After reviewing the record in this case, including the materials submitted *in camera*, it appeared to the Court that the 2,509 pages of records uncovered by TIGTA were not responsive to the request as clarified by plaintiff in its reply brief. For that reason, the Court ordered defendant to "publicly file a notice, with a declaration attached . . . stating whether any of the 2,509 pages of records . . . are responsive to the only request at issue in this case." Order (July 28, 2015). TIGTA responded with an affidavit averring that "all of the 2,509 pages of records at issue in this case consist of records related to TIGTA's investigation into allegations of unauthorized disclosures. Thus, none of the 2,509 pages of records that TIGTA located in response to Cause of Action's FOIA request are responsive." 3d Miller Decl. ¶ 5; *see also* Notice at 1.

Without prompting by the Court, plaintiff responded to defendant's submission and again emphasized the narrow scope of its request:

> [Cause of Action's] FOIA request was intentionally structured to require a finding or conclusion of "unauthorized disclosure" (signified by the words "into the" to modify "unauthorized disclosure" of return information) as a limitation on the universe of records to be searched. . . . This was to avoid records relating to allegations of unauthorized disclosures that did not lead to findings of actual unauthorized disclosures. This Court's Order, ECF No. 57 reflects this, and does not relieve Defendant from producing records of actual, as opposed to alleged, unauthorized disclosures.

Pl.'s Resp. to Def.'s Notice at 2 (citation omitted).

In light of plaintiff's clarification of the scope of its request, and upon review of the record, including the materials filed *in camera*, the Court concludes that none of the records identified by defendant are responsive to plaintiff's request. Accordingly, the Court will grant defendant's motion for summary judgment, and it will deny plaintiff's cross-motion for summary judgment. *See Concepcion v. FBI*, 606 F. Supp. 2d 14, 30 (D.D.C. 2009) ("If

11

an agency does not locate records responsive to a FOIA request, it still may prevail on summary judgment if it establishes 'that it located no records responsive to plaintiff's request after a reasonable search.'"), quoting *Davidson v. EPA*, 121 F. Supp. 2d 38, 39 (D.D.C. 2000).

## CONCLUSION

For the reasons stated above, the Court will grant defendant's motion for summary judgment and deny plaintiff's cross-motion for summary judgment. A separate order will issue.

*/s/ Amy B. Jackson*

AMY BERMAN JACKSON
United States District Judge

DATE: September 16, 2015